IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA PROTECTION AND ADVOCACY SERVICES COMMISSION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) No. 1:24-cv-00833-TWP-TAB ) ) ) ) ) |

**EXPEDITED RESPONSE TO PLAINTIFFS' EMERGENCY
MOTION TO MODIFY PRELIMINARY INJUNCTION**

Plaintiffs, dissatisfied with the Court's ruling last Friday, essentially seek another bite at the apple less than one business day after the Court entered its order. Of course, nothing material has changed over the Labor Day weekend, and Plaintiffs have not made any showing that would justify modifying or reconsidering the ruling. Plaintiffs simply rehash the same arguments they made previously. For example, they ask the Court "to allow their mothers to continue serving as [Plaintiffs'] attendant care providers." Dkt. 56, Mot. at 12, ¶ 25. The Court already considered and rejected that argument, concluding that "this relief is not feasible." Dkt. 55 at 34. The Court reached this conclusion because Plaintiffs' requested injunction does not comply with existing Medicaid law. *See Vaughn v. Walthall*, 968 F.3d 814, 827 (7th Cir. 2020) (plaintiffs are only "entitled to receive at-home care by providers of [their] choosing to the extent that, working with the State, [they] can craft a program that complies with federal and state law and does not deprive Indiana of the ability to receive its share of federal reimbursement through the Medicaid program for services provided"). The Court should deny Plaintiffs' current motion on these same grounds. To the extent Plaintiffs' motion offers any new arguments or facts, Plaintiffs could have raised

these arguments in the extensive preliminary-injunction briefing or at oral argument. They failed to do so and should not be permitted to submit new evidence and arguments now, without the benefit of discovery or full briefing, in a hail-Mary attempt to re-position their claims. In any event, nothing in Plaintiffs' motion warrants a modification of the preliminary injunction. FSSA will comply with the Court's preliminary-injunction order, and the motion should be denied.[1]

## ARGUMENT

### I. Plaintiffs are not entitled to the relief they seek because they present arguments the Court already considered and rejected.

At the outset, Plaintiffs' motion should be denied because they cannot meet the standard for what is essentially a request that the Court reconsider its order. *See PrimeSource Bldg. Prod., Inc. v. Felten*, 2018 WL 10425921, at *2 (N.D. Ill. Mar. 8, 2018) ("Where a motion to alter or amend a preliminary injunction order is filed within 28 days of the order, it is governed by Rule 59(e)." (citing *Fin. Servs. Corp. of Midwest v. Weindruch*, 764 F.2d 197, 198 (7th Cir. 1985))).

To succeed on a motion for reconsideration, "the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). As this Court has explained, the bar for establishing manifest error is high: "A manifest error 'is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Outzen v. Kapsch Trafficcom USA, Inc.*, 2022 WL 4259675, at *2 (S.D. Ind. Sep. 15, 2022) (Pratt, C.J.) (quoting *Oto*, 224 F.3d at 606). Furthermore, a motion for "'[r]econsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.'" *Id.* (quoting *Ahmed v. Ashcroft*, 388 F.3d 247, 249

---

[1] FSSA respectfully disagrees that any relief is appropriate for the reasons stated in its preliminary-injunction briefing, Dkt. 37, but understands that it must abide by the Court's order.

(7th Cir. 2004)). As the Court emphasized: "Motion practice is not an exercise in trial and error or maybe-maybe not where a party can reserve arguments to present later if earlier ones fail. The Court is entitled to assume that, if [a party] had viable arguments to support its claim, it would have presented them." *Outzen*, 2022 WL 4259675, at *2 (quoting *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 WL 799546, at *7 (S.D. Ind. Mar. 24, 2009)). Plaintiffs make no attempt to establish that the Court made a manifest error of law or fact according to the governing standard— a "wholesale disregard, misapplication, or failure to recognize controlling precedent," *Oto*, 224 F.3d at 606. That failure alone is reason enough to deny their motion.

Plaintiffs, instead, repeat facts and arguments that they already presented to the Court, which is an improper basis for seeking reconsideration. *See Outzen*, 2022 WL 4259675, at *2. For example, Plaintiffs reassert that E.R. and G.S. have "unique needs." Mot. at 3-4, ¶ 5. But, as the Court observed, Plaintiffs "devoted over fifty pages of briefing to the facts" surrounding their needs and circumstances during the preliminary-injunction briefing, Dkt. 55 at 30, and the Court fully considered that the "Individual Plaintiffs have complex needs" in its order, *id.* at 31; *see, e.g.*, *id.* at 8-15 (describing in detail, and repeatedly citing Plaintiffs' filings regarding, E.R.'s and G.S.'s circumstances). Plaintiffs also contend that "there is no reasonable likelihood that FSSA will risk losing federal Medicaid funding," Mot. at 5, ¶ 9, but those arguments could have been raised— and, indeed, were raised—during the preliminary-injunction briefing, *see* Dkt. 47-1 at 15-16, and correctly were rejected by the Court, Dkt. 55 at 32; *see also* Section II, *infra*. Plaintiffs' motion fails to assert any grounds justifying reconsideration of the Court's order. *Oto*, 224 F.3d at 606.

Although Plaintiffs' motion is best understood as a motion for reconsideration, it also falls short under the legal standard governing motions for modification of a preliminary injunction. When reviewing a request to modify a preliminary injunction, courts generally apply the same

3

standard as when deciding whether to grant a preliminary injunction. *Eppley v. Iacovelli*, 2010 WL 3282577, at *1 (S.D. Ind. Aug. 17, 2010) (citation omitted) ("When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place."). Critical to making this determination, "[c]ourts consider 'whether [the movant] has demonstrated that changed circumstances make the continuation of the injunction inequitable.'" *Geft Outdoor, LLC v. City of Westfield*, 2022 WL 3541867, at *2 (S.D. Ind. Aug. 18, 2022) (citation omitted). "There is … no dispute but that a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *Sys. Fed'n No. 91, Ry. Emps. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961); *see also Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015).

For the same reasons as above and in the Court's preliminary-injunction order, Plaintiffs fail to demonstrate they are entitled to a modified injunction that would grant them the injunction they originally sought and were denied six days ago. Just like in their preliminary-injunction briefing, Plaintiffs contend that the risk of loss of federal funding is not a weighty consideration given FSSA's conduct, *compare* Mot. at 5-6, ¶¶ 9-10, *with* Dkt. 31 at 33, and Dkt. 47-1 at 17, and that they seek to require FSSA to establish an "extraordinary care definition" through a waiver with the federal government, *compare* Mot. at 6-7, ¶ 11, *with* Dkt. 47-1 at 16 n.9. The Court already considered Plaintiffs' arguments and weighed the balance of the harms and public interest, concluding that "if the Court granted the injunctive relief sought by the Plaintiffs, the harm to FSSA and the public would outweigh the harm to the Individual Plaintiffs." Dkt. 55 at 31-32.

Plaintiffs have not demonstrated any changes have occurred in four calendar days that would justify a modification. *See Geft Outdoor*, 2022 WL 3541867, at *2.

> II. **The Court should reject Plaintiffs' renewed request for an injunction ordering FSSA to violate the terms of the H&W Waiver and federal law to pay their mothers as providers of attendant care services.**
>
> A. **The Court already rejected Plaintiffs' arguments and should do so again.**

Rather than identifying any "manifest errors" in the order, Plaintiffs ask the Court to do an about-face on the scope of the current injunction. In doing so, Plaintiffs request the Court to change its conclusion that it cannot order FSSA to pay these LRIs to provide attendant care services because doing so would violate federal law and risk losing federal funding. Dkt. 55 at 32-35. At bottom, Plaintiffs simply take issue with the Court's relative weighing of the preliminary-injunction factors, which is not a valid reason to reconsider. *See Outzen*, 2022 WL 4259675, at *2 ("A manifest error is not demonstrated by the disappointment of the losing party." (cleaned up)). As discussed below, Plaintiffs provide no persuasive reason to alter the Court's correct rejection of Plaintiffs' requested relief.

As the Court correctly concluded, granting the injunction Plaintiffs seek could place the state at risk of not receiving federal reimbursement. Dkt. 55 at 32. The Court also found that "[e]ven if the Court construed IPAS' request to allow the Individual Participants to provide ATTC under the newly created H&W Waiver, as presently written, it would still violate 42 C.F.R. § 440.167 resulting in possible loss of Medicaid funding." *Id.*, n.17. Indeed, Plaintiffs concede federal law authorizes the federal government to "terminate any … waiver where [it] finds noncompliance has occurred." Mot. at 5, ¶ 9 (citing 42 U.S.C. § 1396n(f)(1)). While Plaintiffs focus on termination of waivers, they say nothing new to address the fact that FSSA's failure to comply with federal requirements could also result in the federal government withholding funding.

*See Planned Parenthood of Ind., Inc. v. Comm'r*, 699 F.3d 962, 969 (7th Cir. 2012) ("The HHS Secretary may withhold Medicaid funding—either in whole or in part—from any state whose plan does not comply with federal requirements") (citing 42 U.S.C. § 1396c; 42 C.F.R. § 430.12(c)).

Plaintiffs regurgitate their argument that the risk to funding could be resolved by requiring FSSA to amend the H&W Waiver by implementing an "extraordinary" care definition, Mot. at 6, ¶ 11, but that is precisely what the Court determined "could result in irreparable harm to FSSA should they rewrite the H&W Waiver and later succeed in this case[.]" Dkt. 55 at 34 ("should the Court grant the preliminary injunction sought and the state lose its funding, the harm to both FSSA and the public would be grave"). That order is consistent with the Seventh Circuit's cautionary instruction to district courts not to issue injunctions requiring a state "to furnish [plaintiffs'] care entirely out of its own funds, unreimbursed and unsupplemented by Medicaid" because no "provision in the federal statute or regulations" requires that action. *Vaughn*, 968 F.3d at 826. Plaintiffs ask the Court to reconsider the weight which it afforded the harm to FSSA and the public. But the Court's decision is well founded. As the Court observed, FSSA does not permit LRIs to provide attendant care services under the H&W Waiver "because they would have to limit the number of hours Legally Responsible Individuals and non-Legally Responsible Individuals could provide these services or introduce the inclusion of a fiscally sustainable definition of 'extraordinary care.'" Dkt. 55 at 6 (citing Dkt. 38-1 ¶ 26).

What is more, FSSA's Deputy Director for the Division of Disability and Rehabilitative Services (DDRS) previously explained that "[e]ither of those approaches would have limited which existing waiver recipients could receive such care by an LRI . . . and left some of the members without any option for paid care giving by an LRI." Dkt. 38-1, Robinson Decl. ¶ 26. She continued that "[a]s a result, the changes to the H&W Waiver under Structured Family Caregiving

6

allows more recipients of the former A&D Waiver to continue to receive unskilled waiver services." *Id*. Consequently, Plaintiffs' proposed solution to amend the H&W Waiver might benefit them individually but would disrupt existing services for other recipients and cause some to be without any option for paid care from an LRI. Any irreparable harm is therefore not only to FSSA but also to the other Medicaid recipients, which is far from merely an "administrative burden to FSSA," as Plaintiffs suggest. Mot. at 6, ¶ 11; *O.B. v. Norwood*, 838 F.3d 837, 842 (7th Cir. 2016) (explaining a court could not "order nurses to be removed from positions caring for other people" to meet the plaintiffs' needs).

### B. Plaintiffs' emergency request for relief is at odds with their prior representations to the Court.

The Court should deny Plaintiffs' renewed request for several additional reasons. As an initial matter, Plaintiffs raise concerns about the training of skilled nurses and Plaintiffs' mothers' comfort with skilled nurses providing care to the Plaintiffs without the mothers present. Plaintiffs' stated concerns that skilled nurses—who are licensed and trained to provide the skilled care Plaintiffs require—will not meet their needs are purely speculative. Plaintiffs note that "presumably any nurse may be trained to recognize and attend to the plaintiffs' complex, life-threatening medical needs," but they contend that the mothers must spend considerable time to provide additional training to the nurses once they are hired. *See, e.g.*, Mot. at 8-9, ¶ 16 ("it was fully a month or two before Ms. Carter felt comfortable leaving [a prior nurse] alone with E.R."); Mot. 8, ¶ 16 ("in the past, Ms. Knight has been required to spend weeks training them to administer G.S.'s feedings, to monitor his oximeter, and to respond to the wide variety of medical events[.]"). Plaintiffs therefore ask the Court to order FSSA to pay their mothers to provide attendant care services while they train nursing staff to provide skilled services.

That injunction not only would grant Plaintiffs services no Medicaid member receives, it also is at odds with Plaintiffs' prior representations to the Court that they do not seek to be paid for skilled services. Dkt. 47-1 at 16. As FSSA previously argued, providers of attendant care services are *not* permitted to be paid for skilled services (Dkt. 37 at 25; Dkt. 38-1, Robinson Decl. ¶ 27), nor may they be paid to provide skilled services to train nurses. Indeed, the Court did not address this argument further because Plaintiffs represented and "clarifie[d] that they are not seeking to be paid for skilled services[.]" Dkt. 55 at 15, n.15 (citing Dkt. 47-1 at 16). Now Plaintiffs ask the Court to do so. The Court should reject Plaintiffs' attempt to revive this argument.

### C. Plaintiffs' emergency request for relief is based on their unfounded concern that FSSA will not comply with the Court's order.

Plaintiffs also base their emergency request for relief on their unfounded concern that FSSA will not comply with the Court's order. Mot. at 3, ¶ 4. Plaintiffs apparently take issue with the fact that "arranging for qualified nursing staff is not an overnight endeavor" for anyone, including FSSA. *Id.* Yet Plaintiffs admit that "it cannot be known with certainty whether home nursing is available until FSSA takes all steps possible to attempt to comply with the preliminary injunction[.]" *Id.* Plaintiffs nevertheless filed this emergency request the first business day after the injunction, acknowledging that "the period since the issuance of a preliminary injunction has thus far consisted exclusively of a holiday weekend," before those steps reasonably could be taken. Mot. at 11, ¶ 23. Thus, there is no basis to suggest that FSSA will not comply with the order.

Nor should noncompliance be presumed when a court enters a preliminary injunction. Instead, there are proper mechanisms by which to address alleged noncompliance with a court's injunction. *See, e.g.*, *Vega v. Chicago Park Dist.*, 605 F. Supp. 3d 1086, 1095 (N.D. Ill. 2022) ("In general, an injunction is enforced through the district court's civil contempt power as follows. If the plaintiff (the party obtaining injunction) believes that the defendant (the enjoined party) is

8

failing to comply with the injunction, the plaintiff moves the court to issue an order to show cause why the defendant should not be adjudged in civil contempt and sanctioned.") (quoting 13 Moore's Federal Practice § 65.81 (2021)). Plaintiffs' emergency request is nothing more than an attempt to preemptively side-step these procedures.

In fact, Plaintiffs are not going without necessary services for the time being, so this emergency relief is not required to avoid institutionalization. Of course, it is not an "overnight" endeavor to "arrange directly or through referral to appropriate agencies, organizations, or individuals, corrective treatment of in-home skilled nursing services[.]" Dkt. 55 at 35. But the Court's order did not stop there. It also contemplated that Plaintiffs' mothers would continue caring for their children, as they have been for the last several years, and would be paid under Structured Family Caregiving. *Id*. (requiring FSSA to "reimburse the mothers for providing SFC in conjunction"). Because Plaintiffs' emergency request for relief relies on their unfounded concern that FSSA will not comply with the injunction, there is no basis to reconsider the Court's order.

### D. Plaintiffs' dismissiveness of the skilled nursing care illustrates the relief sought by Plaintiffs is higher reimbursement rates for their mothers than the rates provided under Structured Family Caregiving.

Lastly, Plaintiffs are curiously dismissive of skilled nursing care. For example, Plaintiffs state that "only one of G.S.'s previous nurses have garnered the facility [sic] with G.S. that enabled her to make decisions regarding how to respond to certain events without relying on Ms. Knight for guidance[.]" Mot. at 8-9, ¶ 16. They also contend even "[u]nder the best of circumstances, this would not merely be a matter of finding licensed nurses willing to work the requisite hours," but "[r]ather, the entire range of services provided must be sufficient to allow the individual plaintiffs' mothers to return to work." Mot. at 3, ¶ 5. Plaintiffs' arguments illustrate that, in reality, the primary relief sought by Plaintiffs is for their mothers to be reimbursed at a higher rate than every other LRI receiving Structured Family Caregiving.

9

While FSSA is sympathetic to the financial needs of Plaintiffs, neither Medicaid law generally nor the H&W Waiver specifically guarantees an income sufficient to support a family. *See, e.g., Vaughn*, 968 F.3d at 826 ("This case is about Indiana's Medicaid program, not its general social-welfare regime."); *Carter v. Gregoire*, 672 F. Supp. 2d 1146, 1158 (W.D. Wash. 2009), *aff'd sub nom. Carter ex rel. Stewart v. Gregoire*, 362 F. App'x 743 (9th Cir. 2010) (concluding that requiring a recipient to choose between a non-family provider at a higher rate or a family provider at a lower rate did not violate Medicaid law); *see also* Dkt. 37 at 26-28 (explaining that Plaintiffs' request is also barred because it is a "disguised challenge to Indiana's Medicaid reimbursement rates," *Vaughn*, 968 F.3d at 821).

\* \* \*

The Court should reject Plaintiffs' renewed request for an injunction ordering FSSA to pay their mothers as providers of attendant care services because the Court correctly determined that doing so at this juncture would violate the terms of the H&W Waiver and federal law.

### III. The Court should reject Plaintiffs' alternative request for four modifications.

#### A. Plaintiffs' requested modifications seek relief the Court already rejected.

Plaintiffs' requested "modifications" are a poorly disguised request for the original relief they sought that the Court rejected. Specifically, the second proposed "modification" would require that "Ms. Carter and Ms. Knight must be allowed to serve as their children's paid providers of attendant care services." Mot. at 9, ¶ 17. This request is identical to Plaintiffs' preliminary-injunction motion, which sought an order requiring FSSA "to allow the Individual Plaintiffs to continue receiving … services provided by their parents, and enjoining the defendants from enforcing against the Individual Plaintiffs the restriction on the provision of attendant care services by legally responsible individuals." Dkt. 9 at 1. The Court expressly rejected the requested

10

injunction because "this relief is not feasible." Dkt. 55 at 34. Plaintiffs' renewed request for the same relief in the form of a "modification" should be rejected for the same reason.

### B. The Court should deny the modifications "ensuring that the plaintiffs' needs are met" no matter the cost.

Plaintiffs request that the Court modify its order to require that FSSA "ensur[e] that the plaintiffs' needs are met" and "ensur[e]" that they receive specific services. Mot. at 7-11. But granting such a request would require the Court to order FSSA essentially to "do whatever is necessary to achieve the result" that Plaintiffs want even if it requires the State to violate its federally approved waiver, which is not a permissible injunction. *Vaughn*, 968 F.3d at 818, 827. That is precisely the kind of relief the Seventh Circuit in *O.B.* rejected in favor of an order requiring the Illinois agency to "take immediate and affirmative steps to arrange directly or through referral" in-home nursing services for the plaintiffs. 838 F.3d at 840; *id.* at 842 (explaining it "could not order the agency to eliminate the [nursing] shortage by raising th[e reimbursement] rates" or take nurses away from other individuals to meet the plaintiffs' needs). The Court again should reject Plaintiffs' request that the Court violate settled law by ordering FSSA to pay their mothers to provide attendant care services. *See Vaughn*, 968 F.3d at 827; Dkt. 55 at 34.

### C. The Court should not circumvent the Medicaid process to provide more skilled nursing hours for E.R.

Plaintiffs ask that the Court modify the injunction to provide coverage for a different number of skilled-nursing hours for E.R. Mot. at 10-11, ¶¶ 20-22. But the number of hours reflected in the Court's ruling is entirely consistent with the evidence in the preliminary-injunction record. The forty hours of skilled nursing *on top of* Structured Family Caregiving and natural supports will meet E.R.'s needs and avoid institutionalization. *See, e.g.*, Dkt. 55 at 31 ("The Individual Plaintiffs have complex needs and both parties agree that someone qualified to perform skilled services needs to be present for at least thirty to forty hours per week."); *see* Dkt. 39-1

11

(Finnell Decl.) ¶¶ 28(a), 37(a) (explaining how Plaintiffs and their mothers' needs can be met with 30-40 hours of skilled nursing); Dkt. 28-7 (Carter Aff.) ¶ 16 (E.R. approved for 40 hours skilled nursing). Again, Plaintiffs have not presented anything *new* to justify changing the Court's ruling. Moreover, to the extent they seek some other number of skilled-nursing hours, the Court need not intervene in that process. The Medicaid programs have mechanisms and processes in place for enrollees who want to be reevaluated for a change in circumstances or who dispute the number of hours approved. *See* 405 Ind. Admin. Code 1.1 *et seq.* (setting forth the appeal process for applicants and recipients of Medicaid); Dkt. 38-1, ¶¶ 12-14 (describing waiver eligibility assessment and appeal process).

There is no reason that Plaintiffs cannot continue to utilize the existing Medicaid process to have their needs evaluated and an appropriate number of hours approved.

### D. Bi-monthly status reports are not necessary.

The Court should deny Plaintiffs' request that FSSA file an initial status report in seven days and provide subsequent reports every two weeks "providing as much detail as possible" as to whether and when it anticipates securing nursing services for the Plaintiffs. Plaintiffs' request is unnecessary, and they provide no justification for imposing such an involved reporting process. Nothing in the Federal Rules of Civil Procedure requires a party to report back with respect to its compliance with a Court order. Nor is there any basis for the Court to create some additional compliance process here. Plaintiffs do not argue, nor could they a mere business day following the Court's order, that FSSA is not taking steps as required by the preliminary injunction. To be clear, FSSA will comply with the Court's preliminary-injunction ruling, and additional oversight of that process is not required or justified.

FSSA certainly does not object to keeping Plaintiffs apprised of the status of services and in fact hopes to work cooperatively with Plaintiffs in the process of securing nurses. Indeed, FSSA

will need Plaintiffs' collaboration and engagement in this process. (As just one example, Plaintiffs will have to work with FSSA/providers with respect to what days of the week and what hours of the day the nursing services are needed.) While FSSA believes it to be unnecessary, in the event the Court is inclined to require some reporting obligation, FSSA proposes that the parties submit one joint status report in 30 days in which FSSA can identify the steps it has taken to comply with the order, and Plaintiffs can describe the steps they have taken with respect to cooperating in the process, including whether they have accepted or rejected any nurses that may have been identified.

## CONCLUSION

The Court should deny the motion.

Dated: September 5, 2024

Respectfully submitted,

s/ Harmony Mappes
Ryan M. Hurley
Harmony A. Mappes
Matthew R. Elliott
Melinda Hudson
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
ryan.hurley@faegredrinker.com
harmony.mappes@faegredrinker.com
matthew.elliott@faegredrinker.com
melinda.hudson@faegredrinker.com

*Attorneys for Defendants*