UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA PROTECTION AND ADVOCACY SERVICES COMMISSION, E. R., G. S., <br><br>   Plaintiffs, <br><br> v. <br><br> INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, SECRETARY OF THE INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION, DIRECTOR OF THE DIVISION OF DISABILITY AND REHABILITATIVE SERVICES, <br><br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No. 1:24-cv-00833-TWP-TAB |

**ORDER ON EMERGENCY MOTION TO MODIFY PRELIMINARY INJUNCTION**

This matter is before the Court on an Emergency Motion to Modify Preliminary Injunction filed by Plaintiffs Indiana Protection and Advocacy Services Commission ("IPAS"), E.R., and G.S. (together, the "Individual Plaintiffs") (collectively with IPAS, "Plaintiffs") (Filing No. 56). Plaintiffs ask the Court to modify its September 3, 2024 Amended Order on Plaintiffs' Motion for Preliminary Injunction (Filing No. 55) in several respects. For reasons explained in this Order, the Motion is **granted in part** and **denied in part**.

### I.   BACKGROUND

The complex circumstances that led to this action are described in detail in the Amended Order on Plaintiffs' Motion for Preliminary Injunction (the "Preliminary Injunction Order"). The Court will not recite those fact here as a brief summary will suffice for purposes of the instant Motion to Modify.

E.R. and G.S. are two medically fragile children with rare unpredictable conditions that require the constant presence of someone specifically trained to attend to their needs. For many years, those caretakers were E.R. and G.S.'s mothers, and for many years, their mothers were reimbursed for their caretaking services with Medicaid funds by the Defendant Indiana Family and Social Services Administration ("FSSA"). In light of recent changes, FSSA will no longer pay the mothers for these services.

Medicaid is a cooperative federal-state program through which the federal government provides assistance to states so that they may furnish medical care to needy individuals. In Indiana, the Medicaid program (the "State Program") is administered by FSSA. The State Plan covers traditional Medicaid services, as well as several home- and community-based Medicaid waiver programs, including the Aged and Disabled Medicaid Waiver Program (the "A&D Waiver"). Enrollees in the A&D Waiver may receive attendant care services ("ATTC") or structured family caregiving ("SFC"). There is no cap on the number of hours of ATTC that may be provided. Pursuant to the terms of the A&D Waiver, neither ATTC nor SFC may be provided by "Legally Responsible Individuals", including parents. However, despite the terms of its own waiver, FSSA allowed Legally Responsible Individuals to provide paid ATTC and SFC for several years.

In 2023, FSSA discovered an unanticipated increase in its forecasted Medicaid expenses and a large budget variance, which led it to conduct a review of multiple programs. FSSA concluded that the budget variance was due in part to ATTC provided by Legally Responsible Individuals. FSSA implemented mitigation strategies in January 2024, including a proposed Health and Wellness Waiver (the "H&W Waiver"), under which Legally Responsible Individuals would not be permitted to provide ATTC but could provide SFC. On July 1, 2024, the A&D Waiver was officially replaced by the H&W Waiver (and another waiver not relevant here).

E.R. and G.S. are six and ten years old, respectively, with rare and complex medical conditions. They both reside with their mothers, who are their primary and full-time caretakers. Until recently, the mothers (and E.R.'s nineteen-year-old sister) were approved to be reimbursed for ATTC under the A&D Waiver. But after the H&W Waiver replaced the A&D Waiver, E.R. and G.S.'s mothers could no longer be paid for ATTC. Plaintiffs' mothers have tried, but have been unable, to find other adequate medical care, and without the payments from FSSA, they believe they will be left with no choice but to institutionalize their sons.

Plaintiffs initiated this action on May 17, 2024, alleging, in part, that FSSA's changes to the A&D Waiver places children at risk of institutionalization and therefore violates Medicaid law. Plaintiffs moved for a preliminary injunction to enjoin FSSA from prohibiting or otherwise restricting Legally Responsible Individuals of enrollees in the H&W Waiver, including E.R. and G.S.'s mothers, from serving as paid providers of ATTC (Filing No. 9). FSSA voluntarily agreed to let E.R. and G.S.'s mother continue providing paid ATTC through September 1, 2024.

On August 30, 2024, the Court granted the Plaintiffs' Motion for Preliminary Injunction, as modified (Filing No. 55).[1] In its Preliminary Injunction Order, the Court found that Plaintiffs had a strong likelihood of success on the merits of their claims, no adequate remedy at law, and would face irreparable harm if FSSA was not enjoined in some way. However, the Court also explained that it could not grant the preliminary injunctive relief requested by Plaintiffs—an order enjoining FSSA from prohibiting Legally Responsible Individuals from serving as paid ATTC providers— nor could the Court order FSSA to rewrite the H&W Waiver, such that E.R. and G.S.'s mothers could be paid for ATTC, without risking irreparable harm to FSSA (Filing No. 55 at 33–34). The

---

[1] The Court issued its original Order on Plaintiffs' Motion for Preliminary Injunction on August 30, 2024, at Filing No. 54, and issued an Amended Order on September 3, 2024 at Filing No. 55, which is identical to the original Order in all material respects.

Court diligently attempted to craft an appropriate remedy "to sustain the Individual Plaintiffs during this litigation" while they "pursue a permanent injunction." *Id.* at 34. The Court therefore issued a preliminary injunction (the "Preliminary Injunction"):

> **ORDERING** Defendants to take immediate and affirmative steps to (1) arrange directly or through referral to appropriate agencies, organizations, or individuals, corrective treatment of in-home skilled nursing services to E.R. for a minimum of forty hours and G.S. for a minimum of eighty hours per week and, (2) reimburse the mothers for providing SFC in conjunction.

*Id.* at 35.

On September 3, 2024, Plaintiffs filed the instant Motion to Modify. The Court set an expedited briefing schedule on the Motion (Filing No. 57). FSSA filed its response on September 5, 2024, and Plaintiffs waived their right to a reply (Filing No. 58). The Motion to Modify is now ripe for the Court's review.

## II.     LEGAL STANDARD

Plaintiffs do not set forth the legal basis for requesting modification of the Preliminary Injunction. Defendants argue that the Motion to Modify is properly considered as a Rule 59 motion for reconsideration. Several district courts have considered requests to modify preliminary injunctions under Rule 60(b)(5), which "permits a party to obtain relief from a judgment or order if, among other things, 'applying [the judgment or order] prospectively is no longer equitable.'" *Reed v. Minott*, 2014 WL 5798618, *2 (S.D. Ind. 2014) (quoting and citing *Horne v. Flores*, 557 U.S. 433, 447 (2009)).

Regardless of the specific grounds for Plaintiffs' motion, "[t]here is no dispute that a court has the authority to modify a preliminary injunction." *Eppley v. Iacovelli*, No. 09-cv-386, 2010 WL 3282577, at *1 (S.D. Ind. Aug. 17, 2010). "When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 340 (3d Cir.1993) (*quoting Sierra*

*Club v. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir.1984)). "The court is authorized to make any changes in the injunction that are equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 578 (5th Cir.1974). However, "[t]he motion [to modify an injunction] does not force the trial judge to permit relitigation of [her] original determination of the injunction." *Merrell–National Lab'ys, Inc. v. Zenith Lab'ys, Inc.*, 579 F.2d 786, 791 (3d Cir. 1978).

### III.   DISCUSSION

Plaintiffs ask the Court to modify the Preliminary Injunction to allow E.R. and G.S.'s mothers to continue serving as their paid providers of ATTC or, alternatively, to modify the Preliminary Injunction to clarify the type and amount of in-home nursing services that the Individual Plaintiffs will receive, and to require status updates that ensure Defendants' timely compliance with the Preliminary Injunction. The Court will address Plaintiffs' primary and alternative requests for modification in turn.

**A.   Modification to Allow Mothers to Be Paid Providers of ATTC**

Plaintiffs first and primarily ask the Court to modify the Preliminary Injunction to allow the Individual Plaintiffs' mothers to continue serving as paid providers of ATTC, which is the injunctive relief Plaintiffs initially requested (Filing No. 56 at 4). In the Preliminary Injunction Order, the Court explained that it was unable to grant this type of relief for two reasons: first, it would require FSSA to violate federal Medicaid law, placing FSSA at risk of losing Medicaid funding; and second, requiring FSSA to amend the H&W Waiver would pose too great a risk of irreparable harm to FSSA (Filing No. 55 at 33–34). The Court explained that while it is "not a professional healthcare administrator, and it does not know exactly what will work, based on the evidence presented by the parties, skilled nursing services and reimbursement of SFC should be sufficient to provide the Individual Plaintiffs with the care they require." *Id.* at 34.

5

Plaintiffs contend that neither of the reasons identified by the Court justifies denying Plaintiffs' requested injunctive relief, and that the injunctive relief the Court provided may not alleviate the Individual Plaintiffs' risk of institutionalization (Filing No. 56 at 4–7).

### 1. The Court Cannot Order FSSA to Violate Medicaid

Plaintiffs first argue "there is no reasonable likelihood that FSSA will risk losing federal Medicaid funding should the Court order that it continue reimbursing the plaintiffs' mothers to provide attendant care services." *Id.* at 5. Plaintiffs state that their counsel could not "unearth a single instance in which the federal government invoked its authority . . . to terminate a Medicaid waiver program as a result of a state's noncompliance with the precise terms of its approved waiver document." *Id.* Plaintiffs further note, as recognized in the Preliminary Injunction Order, "FSSA has willingly chosen to violate the federally-approved waiver for years" and even "agreed to continue violating the waiver until September 1, 2024." (Filing No. 55 a 32; Filing No. 56 at 5). Plaintiffs may be right that there is little risk that FSSA will suffer any irreparable harm if it continues to violate Medicaid law (regardless of how grave the harm would be if the federal government *did* decide to terminate Medicaid funding). However, Plaintiffs have not cited any authority, and the Court can find none, which allow a court to affirmatively order FSSA to violate federal law.

Plaintiffs cite two cases in which courts enjoined provisions of federally approved Medicaid waiver documents "without any apparent fear that a state will lose funding" (Filing No. 56 at 5–6). Neither case is helpful to Plaintiffs. In *B.N. v. Murphy*, the court granted the plaintiff's motion for summary judgment, finding that the plaintiff was entitled to declaratory and injunctive relief because a sixty-hour cap in the State's Aged and Disabled Waiver program violated several state and federal laws and Indiana Medicaid law. No. 09-CV-199, 2011 WL 5838976, at *12 (N.D. Ind. Nov. 16, 2011). The *B.N.* court enjoined enforcement of a waiver provision that violated state

6

and federal law; but the court did not affirmatively require the defendant to take action that would violate Medicaid law, as Plaintiffs ask the Court to do here. Likewise, in *Cruz v. Dudek*, there was no indication that the court's preliminary injunction enjoining the defendants from denying plaintiffs Medicaid services would have forced the defendants to violate Medicaid law. No. 10-23048-CIV, 2010 WL 4284955, at *16 (S.D. Fla. Oct. 12, 2010).

The Court acknowledges that the FSSA admittedly violated Medicaid law for years, which tends to show that FSSA does not genuinely fear a risk of irreparable harm. But the Court's hands are tied. The FSSA may choose to violate federal law, but the Court cannot order it to do so.

### 2. **FSSA Risks Irreparable Harm if Ordered to Amend the H&W Waiver**

Plaintiffs next argue that FSSA could avoid any risk of federal enforcement by amending the H&W Waiver. They contend it is immaterial that "*Steimel* reached this conclusion on summary judgment whereas this Court has been asked to do so on preliminary injunction," since amending the H&W Waiver would impose only an administrative burden on FSSA that "pales in comparison" to the risk of harm to the Individual Plaintiffs (Filing No. 56 at 6 (citing *Steimel v. Wernert*, 823 F.3d 902 (7th Cir. 2016))). Plaintiffs understate the distinction between a preliminary and permanent injunction, as well as the risk of irreparable harm to FSSA.

The Seventh Circuit's decision in *Steimel* is inapposite for two reasons. First, the *Steimel* court did not order the State to modify its waiver. The Seventh Circuit held that a waiver would not constitute a "fundamental alteration" of the State's programs, reversed the district court's order granting summary judgment, and remanded for further proceedings. The court stated only that "[i]f plaintiff prevails on the merits, [then] the district court, in conjunction with the parties, may

exercise its equitable powers *to craft an appropriate injuncti*on."[2] *Id.* at 918 (emphasis added). Second, because *Steimel* was decided on summary judgment, rather than at the preliminary stage, the risk of irreparable harm to the State was not an issue. Here, the FSSA faces a risk of irreparable harm because it may prevail in defending against Plaintiffs' claims, despite Plaintiffs' "strong" likelihood of success (Filing No. 55 at 2, 34).

Additionally, an order requiring FSSA to amend its H&W Waiver risks imposing more than a mere administrative burden on FSSA. Even if the FSSA could easily amend the H&W Waiver now and easily amend it back if FSSA prevails, the FSSA and the public would still face a risk of significant harm. As FSSA explains in its response, amending the H&W Waiver would disrupt existing services to numerous Medicaid recipients. It may also change the scope of individuals who are eligible to receive payment under the waiver and allow more Legally Responsible Individuals to begin receiving payment for providing extraordinary care. As Plaintiffs' own claims demonstrate, those Legally Responsible Individuals would face an incredible burden if the FSSA were to succeed and the Legally Responsible Individuals payments under the H&W Waiver were abruptly taken away. The Court's conclusion remains that the risk of harm to FSSA and the public if the requested injunctive relief is granted outweighs the risk of harm to the Individual Plaintiffs if it is denied.

### 3. The Preliminary Injunction May Alleviate the Risk of Institutionalization

In the Preliminary Injunction Order, the Court found that its modified injunctive relief— requiring FSSA to immediately take steps to obtain in-home nursing services—would alleviate the Individual Plaintiffs' risk of institutionalization while avoiding the risk of irreparable harm to the

---

[2] After the Seventh Circuit issued its Mandate in *Steimel*, the parties' settled their dispute, so the district court did not reach the merits of the plaintiffs' claims or enter a permanent injunction. Order of Dismissal, *Steimel v. Minott*, No. 1:13-cv-957-JMS-MJS (S.D. Ind. Dec. 20, 2016) (acknowledging stipulation of dismissal and dismissing case).

FSSA (Filing No. 55 at 32–35). Plaintiffs argue that this relief "may not alleviate the risk that the individual plaintiffs will require institutionalization in the near future." (Filing No. 56 at 2–3). However, Plaintiffs do not show that the modified injunctive relief *will* not alleviate the risk of institutionalization, only that it "*may*" not. *Id.* ¶¶ 3–5, 7–8, 15–16, 18–19.

As FSSA notes, Plaintiffs filed their Motion to Modify only one business day after the Court entered the Preliminary Injunction. While the Court understands the gravity of Plaintiffs' claims and the urgency with which they need relief, the FSSA has barely had any opportunity to provide that relief. There are simply too many unknowns at this stage for the Court to conclude that the relief in the Preliminary Injunction will not alleviate the Individual Plaintiffs' risk of institutionalization.

Because the Court lacks authority to order FSSA to continue paying the Individual Plaintiffs' mothers to provide ATTC in violation of Medicaid; because the risk of irreparable harm to FSSA outweighs the risk of irreparable harm to the Individual Plaintiffs' with respect to Plaintiffs' requested injunctive relief; and because the Court's modified injunctive relief may alleviate the Individual Plaintiffs' risk of institutionalization, the Court **denies** Plaintiffs' request to modify the Preliminary Injunction to order FSSA to continue paying the Individual Plaintiffs' mothers to serve as paid providers of ATTC.

**B.**     **Modifications Regarding Home Nursing Services and Status Updates**

Plaintiffs alternatively ask the Court to modify the Preliminary Injunction to ensure that: (1) in-home nursing staff are able to attend to the needs of E.R. and G.S. without the assistance of their mothers; (2) E.R. and G.S.'s needs are met during any period of time in which in-home nursing services are not provided; (3) E.R. receives an adequate number of hours of in-home nursing services; and (4) Plaintiffs and the Court are kept apprised of FSSA's efforts to comply

9

with the Preliminary Injunction. The Court will address Plaintiffs' first three proposed alternative modifications and then turn to the modification regarding status reports.

### 1. Modifications Regarding Nursing Services

Most of Plaintiffs' proposed alternative modifications relate to the type and amount of in-home nursing services that FSSA must attempt to obtain for E.R. and G.S. (Filing No. 56 at 7–11). Plaintiffs explain that in the past, it has been difficult or impossible for the Individual Plaintiffs' mothers to find nurses who are capable of providing the Individual Plaintiffs' the specific care that they need. Plaintiffs are concerned that the Individual Plaintiffs' mothers will be unable to financially support their families if they are not paid to provide ATTC until FSSA obtains in-home nursing services. With respect to E.R., Plaintiffs argue that the minimum of forty-hours of weekly nursing services provided for in the Preliminary Injunction does not account for the ATTC that E.R.'s sister will no longer be able to provide once in-home nursing services are provided.

In response, Defendants again argue that the Court may not order FSSA to pay the mothers to provide ATTC, even only for periods when nursing services are unavailable. The Court agrees. To the extent Plaintiffs ask the Court to "ensure" that the Individual Plaintiffs receive necessary care by ordering FSSA to pay the mothers as ATTC providers for any period of time (Filing No. 56 at 9), unfortunately, the Court must deny that request. As explained above, the Court does not have the authority to order FSSA to violate federal law. The mothers may continue providing care to their children, but the Court cannot order the FSSA to pay them for that care.

Defendants also respond that this Court is not required to "ensure" that the Individual Plaintiffs receive any care, and can only order FSSA to take steps to provide care, citing *Vaughn v. Walthall*, 968 F.3d 814 (7th Cir. 2020) (Filing No. 58 at 11). Defendants misunderstand the type of modified relief Plaintiffs request. Plaintiffs only request that the Court modify the type of nursing services that FSSA must take steps to secure, which would not run afoul of *Vaughn*. However, the

Court expects that FSSA would not take steps to simply find *any* in-home nurse for the Individual Plaintiffs and then consider its obligations fulfilled. If that were the case, then Plaintiffs could re-file their request for modification, this time with more certainty that the risk of institutionalization will not be alleviated absent more specific injunctive relief.

As to E.R., the Court agrees with FSSA that Plaintiffs have not presented any new information, not already mentioned in the preliminary injunction briefing, which would warrant modification of the Preliminary Injunction. E.R. has been approved for forty hours of skilled nursing services, so the Court ordered FSSA to take steps to provide "a minimum of forty hours" of services for E.R. (Filing No. 55 at 36). The Court understands that E.R.'s mother was previously approved to be reimbursed for 112 hours of ATTC, and E.R.'s sister was approved to provide 56 hours of ATTC, which allowed E.R.'s mother time to sleep. Although the Preliminary Injunction removes the ability of E.R.'s sister to be paid for providing ATTC, it does not prohibit her from providing those services. It would be an understatement to say that this arrangement may put a financial strain on E.R.'s family, but Plaintiffs have not demonstrated that the provision of a minimum of forty hours a week of skilled nursing services will not alleviate the risk of E.R.'s institutionalization.

Plaintiffs raise valid concerns that FSSA will not "take *immediate* and affirmative steps" (Filing No. 55 at 36 (emphasis added)) to obtain in-home skilled nursing services or that FSSA may be unable to find or provide adequate nursing services. However, at this time, those concerns are too hypothetical to warrant modification of the Preliminary Injunction. Accordingly, the Court **denies** Plaintiffs' alternative requests to modify the Preliminary Injunction to require FSSA to pay the Individual Plaintiffs' mothers to provide ATTC; to specify the type or level of skilled in-home

nurses that FSSA must take steps to find; or to increase the minimum number of hours of skilled nursing services that the FSSA must take steps to obtain for E.R.

### 2. Requiring FSSA to File Status Reports

Plaintiffs lastly ask the Court to require FSSA to file bi-weekly status reports detailing its efforts to obtain in-home nursing services for the Individual Plaintiffs (Filing No. 56 at 11). Plaintiffs explain that these status reports are important because they will inform the Individual Plaintiffs' mothers as to when they will be able to begin outside employment, and, to put it simply, time is of the essence. Defendants respond that "[n]othing in the Federal Rules of Civil Procedure requires a party to report back with respect to its compliance with a Court order" and there is not "any basis for the Court to create some additional compliance here." (Filing No. 58 at 12). Despite opposing Plaintiffs' request, FSSA also states that it "certainly does not object to keeping Plaintiffs apprised of the status of services and in fact hopes to work cooperatively with Plaintiffs in the process of securing nurses." *Id.*

Considering the immediacy with which the Individual Plaintiffs require nursing services and the fact that a lack of immediate services could prove financially ruinous or, at worst, fatal, the Court finds Plaintiffs' request for regular status reports is reasonable. Since FSSA does not oppose "keeping Plaintiffs apprised" of its efforts, the Court fails to see why FSSA could not provide those updates by filing regular status reports. Plaintiffs' request to order Defendants to file a Status Report within seven days and every fourteen days thereafter, providing as much detail as possible as to whether and when FSSA anticipates securing in-home nursing services for the Individual Plaintiffs is **granted**.

### IV.   CONCLUSION

For the reasons explained in this Order, Plaintiffs' Emergency Motion to Modify Preliminary Injunction (Filing No. 56) is **GRANTED in part and DENIED in part**. Pursuant to

Federal Rule of Civil Procedure 65(d), the Court **MODIFIES** the Preliminary Injunction issued on September 3, 2024 ([Filing No. 55](#)) accordingly:

In addition to Defendants' obligations under the Preliminary Injunction ([Filing No. 55](#)), Defendants are **ORDERED** to file a **Status Report** within **seven (7) days from the date of this Order and every fourteen (14) days thereafter**, which provides as much detail as possible as to whether and when FSSA anticipates securing for the Individual Plaintiffs the in-home nursing assistance required by the Preliminary Injunction.

**SO ORDERED**.

Date: 9/9/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Samuel Mark Adams
Indiana Disability Rights
samadams@indianadisabilityrights.org

Thomas E. Crishon
Indiana Disability Rights
tcrishon@indianadisabilityrights.org

Matthew Richard Elliott
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
matthew.elliott@faegredrinker.com

Melinda Hudson
Faegre Drinker Biddle & Reath LLP
melinda.hudson@faegredrinker.com

Ryan Michael Hurley
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
ryan.hurley@Faegredrinker.com

Harmony A. Mappes
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
harmony.mappes@faegredrinker.com

Stevie J. Pactor
ACLU OF INDIANA
spactor@aclu-in.org

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org